HON. MARY K. DIMKE

WILLIAM C. SCHROEDER, WSBA #41986
ANNE K. SCHROEDER, WSBA #47952
WILLIAM J. SCHROEDER, WSBA #7942
**KSB LITIGATION, P.S.**
510 W. Riverside Ave., Ste 300
Spokane, WA, 99201
wcs@ksblit.legal
aschroeder@ksblit.legal
william.schroeder@ksblit.legal
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| HUBERT GILMORE,<br><br>Plaintiff,<br><br>vs.<br><br>BENTON COUNTY, a Washington Political entity,<br><br>Defendants. | No. 4:25-CV-5011<br><br>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**<br><br>02/06/2026<br>With Oral Argument |

Pursuant to LCivR 56(c)(1)(A), Plaintiff submits the following Statement of Material Facts Not In Dispute:

## BACKGROUND

1. Plaintiff Hubert Gilmore ("Gilmore") is 60 years old. He has been married to his wife, Kathleen Gilmore, for 30 years. (Declaration of Hubert Gilmore ("Gilmore Decl.") ¶¶ 2-3)

2. Gilmore lives in a rural portion of the Walla Walla area on a mountain. His house is on five acres of property, and he and his wife raise a few animals. Although Gilmore loves living in an area where he can engage in outdoor

activities, there is one significant drawback. Given the relative remoteness of his house, obtaining and maintaining a reliable internet connection is an ongoing challenge. (*Id*. at ¶¶ 5-6)

3. At the time Gilmore applied for employment with Benton County, he was employed as a correction officer with the Walla Walla Sheriff's Department. (*Id*. at ¶7)

4. On April 21, 2004, Gilmore was hired as a correction officer at the Benton County Correction Center ("Jail"). (*Id*. at ¶8)

5. Gilmore loved his job with Benton County and believed he performed his duties well. He planned to work for Benton County until his retirement. However, after working for Benton County for over 20 years, Gilmore's employment was effectively terminated while he was on authorized Family Medical Leave ("FMLA") caring for his wife while she was recovering from surgery. (*Id*. at ¶9)

6. Gilmore worked at the Jail for 20 years when he was medically separated on May 21, 2024. (Deposition transcript of Hubert Gilmore taken 09/05/2025 ("Gilmore Depo") att'd to the Declaration of Counsel ("Counsel decl.") as Exh 1 [Gilmore Depo. 36:15-22])

7. Benton County Jail is located at 7122 W. Okanagan Place, Kennewick, WA. It can house up to 720 inmates. (Counsel Decl. Exh 2)

8. The person in charge of Benton County Jail during the relevant time period is Chief Robert Guerrero ("Chief Guerrero" or "Chief"). (*Id*.)

## LEFT TORN ROTATOR CUFF

9. In February of 2022, Gilmore was diagnosed with a torn rotator cuff after having issues that got worse with time. (Gilmore Decl. ¶10) [Gilmore Depo. 38:21-25; 39:1-7, 19-23]

10. On February 25, 2022, Gilmore provided Benton County with his doctor's note concerning his injury. (Counsel Decl. Exh 3); [Gilmore Depo. 43:11-14]

11. In the first week of March 2022, Gilmore requested a work accommodation and was put on light duty. (Counsel Decl. Exh 4) (Gilmore Decl. ¶11)

## ACCOMMODATION AND FITNESS POLICIES

12. Benton County's Americans with Disability Act ("ADA") Accommodation Policy states: "Benton County is committed to complying with the Americans with Disabilities Act (ADA), the Americans with Disabilities Act Amendments Act (ADAAA), and applicable state laws…" (Counsel Decl. Exh 5)

13. Benton County's ADA Accommodation Policy lists the ways in which employees may request reasonable accommodations. (*Id.*)

14. The ADA Policy states: "The ADA Coordinator will review the completed Request for Reasonable Accommodation Form and notify the requestor of the decision to approve or deny the request in writing by email or mail or in any other form requested in writing by the requestor… If the request for accommodation was not approved, the Notice will explain why and the appeal process." (Counsel Decl. Exh. 6 BC 5708)

15. One of Benton County's Rule 30(b)(6) Deponents was Chief Guerrero. Chief Guerrero is the individual who decides reasonable accommodation issues for the Benton County Jail. (Deposition of Benton County 30(b)(6) Robert Guerrero taken 06/25/2025 ("Guerrero Depo 1" att'd as Exh 7 to Counsel Decl. [Guerrero Depo 1 22:20-25; 23:1-12]

16. Benton County has no written protocols that they follow in determining reasonable accommodations. [Guerrero Depo 1, 25:21-25; 26:1-25; 27:1-11]

17. Chief Guerrero makes his reasonable accommodations decisions with input from Benton County Human Resources. ("HR") (Deposition of Eric Wyant taken 09/19/2025 ("Wyant Depo 2") att'd as Exh 31 to Counsel Decl. [Wyant Depo 27. 35; 2-10])

18. Benton County's ADA Accommodation Policy also contains a specific grievance procedure to be followed: "Benton County has adopted a grievance procedure providing for prompt and equitable resolution of complaints alleging any action prohibited by the ADA or state law. Benton County prohibits retaliation for making complaints or participating in an investigation." (Counsel Decl. Exh 6, BC 5708)

19. The grievance procedure requires an employee to file a complaint within 10 business days after s/he becomes aware of the alleged violations. (*Id*. at BC 5708)

20. The grievance procedure requires that the investigation of the complaint be concluded with a written evaluation within 30 business days of the receipt of

the complaint. The procedure also allows that this time period may be extended. (*Id*.)

21. Benton County Jail has a policy concerning Fitness for Duty to ensure that all employees of the Jail are mentally and physically fit for duty and able to perform their job functions. (Counsel Decl. Exh 8)

22. The Fitness for Duty Policy also has a procedure that allows the Chief to require an Independent Medical Examination ("IME") if there is a question whether an employee is fit for duty. (*Id*. at BC 612)

23. One of Benton County's Rule 30(b)(6) Deponents testified that the Chief did not require Gilmore to undergo an IME to determine his fitness for duty. [Guererro Depo 1, 11:7-25; 12:1-6]

**GILMORE'S REQUEST FOR ACCOMMODATION AND INTERACTIVE MEETINGS**

24. On March 4, 2022, Gilmore submitted a Job Analysis from his physician clearing him for Light Duty. (Counsel Decl. Exh 9)

25. On March 11, 2022, Benton County accommodated Gilmore by placing him on 'Light Duty Master Control'. (Counsel Decl. Exh 10) (Gilmore Decl. ¶11)

26. On June 10, 2022, Gilmore submitted a Job Analysis which stated: "Concerns regarding officer assignment. Should be assigned to B Control, C Control, Second Floor Rover, Third Floor Rover, or Master Control as these assignments decrease the dependence on others and reduce the chance of re-injury." (Counsel Decl. Exh 11)

27. After submitting the June 10, 2022, Job Analysis, Gilmore was placed on modified duty until November 15, 2022. *(Id)*; [Gilmore Depo. 45:1-16]; [Guerrero Depo 1: 14:1-24]

28. In November 2022, Gilmore was placed back on light duty master control. [Gilmore Depo. 47:2-10]

29. Starting in 2022, Gilmore, Chief Guerrero and/or Eric Wyant ("Wyant"), from HR, began to engage in periodic interactive meetings concerning Gilmore's accommodation. Prior to going on FMLA leave, Gilmore attended every interactive meeting in person. Gilmore believed it was extremely important that all participants attend an interactive meeting in person. [Guerrero Depo 1. 14:1-25, 15:1-25; 16:1-8] (Gilmore Decl. ¶14)

30. In January 2024, Wyant, Chief Guerrero, and Gilmore engaged in an interactive meeting. Wyant had initiated the meeting to touch base after the 12-month mark of providing accommodations. Gilmore reported that his recovery had slowed a bit being back on light duty because of lack of movement, but thought he was making progress. (Benton County Interactive Meeting 01/03/2024 Transcript ("January Meeting") att'd as Exh 12 to Counsel Decl. [2:1-19; 7:5-13]) (Gilmore Decl. ¶15)

31. In January 2024, shortly after the interactive meeting that month, Gilmore was told by his wife that she was to undergo surgery to address a medical condition that was causing her significant discomfort and that surgery was scheduled for April 9, 2024. Ms. Gilmore asked Gilmore to take time off from work to care for her following surgery as she anticipated a very painful recovery.

As a result, sometime in January or February 2024, Gilmore submitted a request for vacation time following surgery. (Gilmore Decl. ¶16) (Kathleen Gilmore Decl. ¶¶ 2-3)

32. On March 11, 2024, Gilmore provided his Fitness for Duty report. (Counsel Decl. Exh 13)

33. On March 11, 2024, Gilmore provided the answers to Benton County's follow-up questions. (Counsel Decl. Exh 14)

34. An interactive meeting was held on March 20, 2024. (Benton County Interactive Meeting ("March Meeting") 03/20/2024 att'd as Exh 15 to Counsel Decl. [2:1-10]

35. At the meeting, Gilmore requested a modified schedule for reasonable accommodations as he had in 2022. Neither Chief Guerrero nor Wyant offered any options to work with Gilmore for reasonable accommodations. (March Meeting: 2:22-24; *passim*]

36. On March 20, 2024, following the interactive meeting, Chief Guerrero sent Gilmore a letter stating that he was considering medically separating Gilmore from his employment and that an interactive meeting has been scheduled for April 18, 2024, to discuss the issue:

> The information discussed and presented at this interactive meeting will be used in determining the most appropriate course of action in this matter. Your duty assignment in master control will be accommodated until this meeting can take place. Your attendance is voluntary; however, should you choose not to attend I will move forward and make such decisions regarding your employment status based on information currently in my possession. (Counsel Decl. Exh 16)

37. When Gilmore received the letter from Chief Guerrero advising him that he had scheduled an interactive meeting for April 18, 2024, to discuss whether he would be medically separated from employment, he was very worried, as it appeared that after 20 years of service to Benton County, his job was on the line. (Gilmore Decl. ¶17)

38. Benton County confirmed in deposition testimony that the decision whether Gilmore would be medically separated from his employment would not be decided until after the April 18, 2024, interactive meeting. (Deposition of Benton County 30(b)(6) Eric Wyant ("Wyant Depo 1") taken 06/25/2025 att'd as Exh. 17 to Counsel Decl. [16:8-15])

39. After Chief Guerrero sent the March 20, 2024, letter he scheduled Gilmore to work March 22, 23, 24 and 28th. (Gilmore Decl. ¶18)

40. Three days later, on March 23, 2024, Benton County sent out a mass email to all employees with information concerning their FMLA rights. After reading the email, Gilmore realized that providing care for his wife following surgery qualified. He filled out the FMLA paperwork and submitted it to HR. (Gilmore Decl. ¶19) [Gilmore Depo. 87:7-12]

**ADA COMPLAINT**

41. On April 1, 2024, Gilmore filed an ADA Complaint pursuant to Benton County Policy Prohibiting Discrimination on the Basis of Disability and Accommodation Request Grievance Procedures. (Counsel Decl. Exh. 18) (Gilmore Decl. ¶25)

42. The Complaint was directed at Chief Guerrero's March 20, 2024, letter that Benton County was considering that Gilmore would be "medically separated" from his employment. (*Id.*) (Gilmore Delc. ¶25)

43. In Gilmore's ADA Complaint he stated, "The most recent information from my health care provider indicated that my condition has improved (albeit slower than anticipated) and my health care provider requested that my duties be expanded, not restricted." (*Id.*)

44. "My health care provider requested that I either be placed in a modified duty position (one I held previously when my condition was not as good as it is now) and would allow County to schedule me in multiple positions of "Full, Unrestricted Duty." These requests are placing LESS hardship on County as they allow for more possibilities and less restrictions." (*Id.*)

45. Gilmore stated that he could forcefully grasp with his left hand, as he had healed. (*Id.*)

46. Gilmore ends the ADA Complaint by asking for modified duty which he had been on previously. (*Id.*)

47. Adam Morasch ("Morasch"), who was in Benton County's risk management department, was appointed as the ADA coordinator to investigate Gilmore's ADA claim. (Deposition of Adam Morasch taken 09/19/2025 ("Morasch Depo") att'd as Exh. 19 to Counsel Decl. [9:6-19])

48. Morasch admitted that he has no formal training in ADA and did not review any ADA law in the process of his investigation. [Morasch Depo. 7:22-25; 8:1-6; 29:10-12]

## FMLA REQUEST

49. On April 8, 2024, Gilmore submitted his FMLA leave form to Benton County to care for his wife after surgery. (Counsel Decl. Exh 20) (Gilmore Decl. ¶19)

50. When Gilmore went on FMLA leave, it was his understanding, based upon the information about FMLA he received from Benton County, that his job was protected while he was on FMLA. (Gilmore Decl. ¶21)

51. Benton County approved Gilmore's FMLA leave and authorized him to be on FMLA leave from April 9, 2024 until May 14, 2024. Gilmore also applied for Washington Paid Family Leave. (Counsel Decl. Exh 21, Exh. 22)

52. On April 11, 2024, one day after Gilmore began his FMLA leave, Benton County sent Gilmore a letter rescheduling this interactive meeting from April 18, 2024 to May 17, 2024 "due to [Gilmore's] FMLA leave". (Counsel Decl. Exh 23) (Gilmore Decl. ¶22)

53. Benton County testified that the April 18, 2024, interactive meeting was rescheduled to May 17, 2024 (3 days after Gilmore was to have returned from FMLA leave) to accommodate Gilmore's FMLA leave. [Wyant Depo 1. 16:20-25; 17:1-11]

54. Wyant testified that Benton County rescheduled the April 18, 2024, interactive meeting to comply with FMLA law. [Wyant Depo 2. 68:1-7]

55. Ms. Gilmore had originally had surgery in July 2023 for a medical condition. The surgery was not a success. Post surgery was very painful for Ms. Gilmore, and she did not heal correctly. (Kathleen Gilmore Decl. ¶2)

56. When the second surgery was scheduled for April 9, 2024, given the pain Ms. Gilmore had experienced following her July 2023 surgery, she had a lot of anxiety about her second surgery. She asked Gilmore to take time off to care for her following the April 9, 2024, surgery. (Kathleen Gilmore Decl. ¶3)

57. Post April 9, 2024 surgery was extremely painful for Ms. Gilmore and she relied totally on Gilmore to care for her. She stated that it would be hard to explain the degree of pain she was experiencing. Following Gilmore's wife's surgery, he was glad he was allowed the time to care for her as she appeared to be in tremendous amount of pain. As she recovered, he cared for her, made meals, and took care of household chores. (Gilmore Decl. ¶12) (Kathleen Decl. ¶4)

58. As Gilmore's wife's surgical recovery was taking longer than originally anticipated, on May 3, 2024, Gilmore requested that his FMLA be extended until June 18, 2024, to continue caring for his wife. (Gilmore Decl. ¶ 24) (Kathleen Gilmore Decl. ¶5)

59. For Ms. Gilmore, the FMLA leave Benton County authorized was a godsend because of the degree of care she needed from her husband while she was recovering. (Kathleen Gilmore Decl. ¶6)

60. Gilmore submitted his request for an extenion of his FMLA leave. Benton County approved Gilmore's FMLA extension on May 3, 2024, and confrmed that Gilmore would be on authorized FMLA leave until June 18, 2024. (Counsel Decl. Exh 25) ((Deposition of Benton County 30(b)(6) Heather Flowers ("Flowers Depo. 1") taken 06/25/2025 [11:13-18]) (Gilmore Decl. ¶24)

61. As Gilmore knew there was a time period in which his ADA complaint had to be investigated, on May 7, 2024, while he was on FMLA leave, he agreed to be interviewed by Morasch, the person for Benton County investigating his ADA Complaint. The interview by Morasch took place by a Webex meeting for a period of approximately 20 minutes. (Gilmore Decl. ¶26)

62. Gilmore voluntarily agreed to the interview, but in doing so, Gilmore did not waive his FMLA rights. (Gilmore Decl. ¶27)

63. Shortly after the interview, Morasch advised Chief Guerrero and Wyant of his May 7, 2024, Webex interview with Gilmore. [Morasch Depo. 17:12-25; 18:1-9]

64. Benton County's Grievance Procedure states: "Benton County prohibits retaliation for making complaints or participating in an investigation." (Counsel Decl. Exh 6)

65. On May 10, 2024, Gilmore sent an email to Chief Guerrero, "I have not heard back from Chief Guerrero as it pertains to the ADA Interactive Meeting scheduled. As listed in this email chain I will be out on FMLA until mid June and will need to have this rescheduled." (Counsel Decl. Exh. 26 BC 930)

66. On the same day, Chief Guerrero responded by sending an Interactive Letter stating, "This letter is to notify you that our scheduled meeting outlined in my letter dated April 11, 2024 will still be held on **Friday May 17th, 2024 at 9am."** (Id. BC 929, Counsel Decl. Exh 27)

67. On May 10, 2024, shortly after receiving his letter, Gilmore responded

to Chief Guerrero:

> As you are well aware I am out on FMLA caring for my wife after a surgical procedure. The FMLA has been approved. I am requesting this meeting be put off until I am able to return to work. I am her only caregiver and it will be difficult to leave her alone at home will try to attend this meeting. I am requesting this meeting be postponed until I return. (Counsel Decl. Exh. 26 BC 929)

68. On May 10, 2024, Chief Guerrero responded:

> I am aware that your FMLA extension has been approved for the care of your wife and am also aware that you participated in another meeting via Webex while on your FMLA leave. This is why the meeting was not rescheduled and it was noted in the updated letter that HR will be sending an updated calendar invite to you with a Webex option for you to attend the meeting remotely. (*Id*. BC 928)

69. On May 10, 2024, Gilmore responded to Chief Guerrero:

> Due to the importance of this meeting, I feel strongly that this is a meeting I need to attend in person, not via Webex. By scheduling this meeting during the time that have been approved for Family Medical Leave, I believe my rights as an employee on FMLA are being violated. I respectfully request that this meeting be rescheduled for a time after June 18, 2024, when my leave ends, so I can attend this meeting in person. (*Id*.)

70. On May 13, 2024, Chief Guerrero responded:

> As a reminder this meeting was originally scheduled for April 18, 2024 and then rescheduled to May 17, 2024 to accommodate your initial FMLA leave. As noted in each of your letters that your attendance is voluntary and understanding that you are caring for your wife the Webex option will be provided for you to participate in this meeting. As I mentioned in my previous email, you attended another meeting for another county department via Webex and this option is again being offered to you to be able to participate in this meeting. (*Id*. BC 927)

71. On May 13, 2024, Gilmore responded:

> I am having a hard time understanding why you are rushing this meeting when you know the situation I am in. I am also having a difficult time understanding Teamsters and HR having no input here. You know I live on a mountain with questionable internet. As this meeting can have a huge impact on the terms of my employment up to an [sic] including "separation of employment" I believe it is to important for me not to be there in person. I am not refusing to attend. I just find it unreasonable to rush this. (*Id*.)

72. On May 13, 2024, Wyant responded to Gilmore:

> HR has not provided input to this point as you haven't requested input from us, and I was taken off your last email until I was added back on by the Chief. I have also taken Heather and Adam off this email chain as their respective positions are not involved in the scheduling of this meeting.
>
> As it relates to the rescheduling of your meeting, it is the opinion of HR that keeping the meeting as scheduled is not unreasonable. The Chief offered a Webex option which is one that you utilized while working with the Risk Manager on your ADA complaint. Additionally, as you will recall, you were sent notice of the initial meeting being scheduled on April 18, 2024 on March 20, 2024 which was before you requested FMLA leave. The FMLA provides job protections so that your need for leave is not something that your employer can discriminate against you for. As this process and the initial scheduling of the meeting pre-date your FMLA request, this meeting is separate and apart from you need for FMLA leave. (*Id*. BC926)

73. On May 13, 2024, Gilmore responded to Wyant:

> With the weight and impact this meeting is having on my well being, BCCD understanding my situtation, and the history here, I believe it to be unreasonable to rush this meeting. I also believe in transparancy so I took the liberty of adding the individuals you removed from this thread. The input of all involved is always requested. (*Id*. BC 925)

74. On May 13, 2024, Wyant responded with a link to the Emplyee Assistance Program for Telehealth on the County website and that the HR people on the email thread will not be providing input. (*Id.*)

75. Benton County admitted in depostion that rescheduling the interactive meeting for May 17, 2024 to sometime after June 18, 2024 would not have been an undue hardship on Benton County [Wyant Depo 1. 20:9-25; 21:1-18]

76. On May 16, 2024, Wyant sent an email to see if Gilmore planned on attending the interactive meeting scheduled for May 17, 2024. (Counsel Decl. Exh. 28)

77. As shown in the emails, Gilmore also advised Chief Guerrero that by refusing to reschedule the interactive meeting for a date after he returned from FMLA on June 18, 2024, he believed his rights as an employee on FMLA were being violated. (Gilmore Decl. ¶31)

78. After 20 years of faithful service to Benton County, Gilmore wanted to attend the interactive meeting in person since the meeting would determine if he still had a job. Gilmore could not understand why, given the importance of the meeting, Chief Guerrero would not simply move the meeting four weeks to a date after Gilmore returned from FMLA. (Gilmore Decl. ¶¶32-33)

79. When Benton County refused to reschedule the interactive meeting to after his FMLA leave had ended, Gilmore informed both Chief Guerrero and Wyant that the weight and impact of rushing the meeting was affecting his well-being negatively. Wyant, instead of moving the meeting, sent him a link about telehealth which was unhelpful and a little offensive. (Gilmore ¶34)

80. Since Chief Guerrero was refusing to reschedule the interactive meeting, Gilmore contacted counsel and had him send a letter requesting that the interactive meeting be rescheduled. (Gilmore Decl. ¶35)

81. On May 16, 2024, Gilmore's counsel sent a letter to Benton County informing them that approving Gilmore's FMLA leave and then scheduling a meeting during that time period violates the FMLA. (Counsel Decl. Exh. 29)

82. Benton County testified that it received a letter from Gilmore's counsel prior to the May 17, 2024, interacting meeting stating that the action was improper. [Wyant Depo 1. 24: 19-25; 25: 1-7]

83. On May 16, 2024, Benton County Prosecutor's Office responded to Gilmore's Counsel, contending Benton County has not engaged in unlawful practice because this interactive meeting was scheduled prior to Gilmore's FMLA leave and that participation is voluntary. (Counsel Decl. Exh. 30)

84. Benton County's Rule 30(b) confirmed he was on authorized FMLA leave May 17, 2024. [Flowers Depo 1 11:13-18]

85. Benton County was aware that Gilmore was on approved FMLA leave to care for his wife. [Wyant Depo 1. 8:22-25]

86. Benton County testified that it was aware that Gilmore had asked that the May 17, 2024, interactive meeting be postponed until he returned from his FMLA leave on June 18, 2024. [Wyant Depo 1. 9:1-6]

87. Benton County testified that the May 17, 2024, interactive meeting was scheduled over Gilmore's objection during FMLA leave. [Wyant Depo 1. 9:22-25; 10:1; 24:14-17]

88. Wyant testified that Gilmore is the only employee Benton County has denied a request for an in person interactive meeting. [Wyant Depo 2: 26:4-12]

89. Benton County testified that the May 17, 2024, interactive meeting was not rescheduled because Gilmore had shown his ability to participate remotely for his ADA grievance investigation. [Wyant Depo 1. 18:16-25 19:1-4; 24:5-13; 20:15-25]

90. Gilmore had attended all of the interactive meetings except the May 17, 2024 meeting. [Wyant Depo 1. 15:1-9]

91. On May 17, 2024, Benton County held the interactive meeting without Gilmore. In the meeting they reviewed job openings in the County that he may qualify for with the Union Representative. (Counsel Decl. Exh 32)

92. Gilmore did not attend the May 17, 2024 meeting because he was caring for his wife while he was on FMLA. The Union Representative who attended did not have authority to speak on his behalf. [Gilmore Depo. 91: 1-23; 92:1-3; 95: 1-4; 95:5-12] (Gilmore Decl. ¶36)

93. On May 21, 2024, Chief Guerrero sent Gilmore a letter for medical separation from the County stating, among other things,

> Based on the information I have at hand and your previous request for continued accommodations, you cannot perform the essential functions of your position as a corrections officer with or without reasonable accommodation, within a reasonable timeframe without placing undue hardship on the County, and the County cannot permanently accommodate your request. Due to this determination, I find it necessary to separate employment with you.

Chief Guerrero concluded that Gilmore could apply for other jobs. (Counsel Decl. Exh 33)

94. Even though Chief Guerrero advised Gilmore that he was being medically separated, Benton County has no medical separation policies in place. [Wyant Depo 2; 37: 23-25; 38:1-5, 21-25]

95. Benton County's Rule 30(b)(6) Deponent testified that Benton County was aware that Gilmore was on authorized FMLA leave when it medically separated Gilmore. [Wyant Depo 1. 8:2-25]

96. The Medical Separation Letter from Benton County left out that Gilmore's FMLA leave had been extended. [Wyant Depo 2: 92:13-25; 93: 1-17]

97. The Medical Separation Letter Gilmore received from Benton County omitted many facts, including that Gilmore wanted to attend the interactive meeting and had requested that the interactive meeting be postponed until after his FMLA leave. [Wyant Depo 2: 93:12-25]

98. Gilmore had advised Chief Guerrero and Wyant at the March 20, 2024, interactive meeting that he would be seen by Dr. Gibbons in June 2024 concerning the status of his recovery from his torn rotator cuff. [Wyant Depo. 1 10:6-15] (Gilmore Decl. ¶38)

99. On June 12, 2024, Gilmore's doctor cleared him for unrestricted duty. (Counsel Decl. Exh 34)

100. On June 13, 2024, five days before he was to return from FMLA leave, Gilmore emailed Benton County that his doctor had cleared him for unrestricted duty. Benton County responded that FMLA reinstatement is for employees only and Gilmore was no longer an employee as of May 21, 2024. (Counsel Decl. Exh 35) (Gilmore Decl. ¶39)

101. On June 18, 2024, the date Benton County had authorized Gilmore to return from FMLA leave, he no longer had a job with Benton County. Gilmore remained unemployed for approximately 6 months. (Gilmore Decl. ¶40)

102. Benton County testified that if an employee was out on FMLA leave and on their return presented a fitness for duty providing that an employee was fully medically released with no restricted duties, Benton County would not medically separate that employee from employment. [Wyant Depo 1. 22:25; 23:1-12]

103. Benton County acknowledged that Gilmore sent a full release from his physician on June 13, 2024. [Wyant Depo 1. 22:14-20]

**KSB LITIGATION, P.S.**

Dated: December 18, 2025

By: *s/Anne K. Schroeder*

William J. Schroeder, #7942
William C. Schroeder, #41986
Anne K. Schroeder, #47952
510 West Riverside Ave., #300
Spokane, Washington, 99201
wcs@ksblit.legal
aschroeder@ksblit.legal
william.schroeder@ksblit.legal
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

[none]

*s/Anne K. Schroeder*
Anne K. Schroeder